UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Maria M.,                                    )
                                             )
            Plaintiff,                       )        No. 21-cv-760
                                             )
      v.                                     )
                                             )        Magistrate Judge Keri L. Holleb Hotaling
MARTIN J. O'MALLEY, Commissioner             )
of the Social Security Administration,       )
                                             )
            Defendant.                       )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maria M.[1] appeals the decision of the Commissioner of the Social Security

Administration ("Commissioner") denying her disability benefits. For the reasons set forth below,

Plaintiff's motion for summary judgment[2] [Dkt. 14] is GRANTED; Defendant's motion for

summary judgment [Dkt. 21] is DENIED. The Commissioner's decision is reversed, and this

matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

I.    **BACKGROUND**

      A.    **Procedural History**

      On August 27, 2018, Plaintiff filed an application for disability insurance benefits, alleging

disability from diabetes, lupus, depression, anxiety, body stiffness, body/muscle pain, inability to

focus, headaches, extreme fatigue, and an inability to read/speak that began on March 1, 2017.

[Administrative Record ("R.") 198-212.] Plaintiff later amended her alleged onset date to February

1, 2018. [R. 189.] Plaintiff's application was denied initially and upon reconsideration. [R. 79-91,

93-106.] Following an Administrative Hearing, Administrative Law Judge ("ALJ") Margaret A.

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only
by her first name and the first initial of her last name(s).

[2]    The Court construes Plaintiff's Brief in Support of Reversing and Remanding the Commissioner's Decision
[Dkt. 18] as a motion for summary judgment.

Carey issued an August 3, 2020 decision that Plaintiff was not disabled. [R. 19-33.] On December 8, 2020, the Appeals Council denied Plaintiff's request for review [R. 1-4], rendering the ALJ's decision the final decision of the Commissioner, reviewable by the district court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2004). Plaintiff filed this lawsuit seeking review of the ALJ's decision [Dkt. 1]; the case was reassigned to Magistrate Judge Keri L. Holleb Hotaling when she took the bench on August 10, 2023 [Dkt. 27].

### B.        Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. Pursuant to the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must start by determining whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment; and (3) the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. §§ 404.1520, 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over; the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ determines whether (4) the claimant is capable of performing her past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If she is not capable of performing her past relevant work, the ALJ must consider (5) the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's residual functional capacity ("RFC") in

2

calculating which work-related activities she is capable of performing given her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

Judicial review of the ALJ's decision is confined to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002); *see also* 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means . . . 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (further citation omitted)); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). While this means that the Court does not try the case de novo or supplant the ALJ's findings with the Court's assessment of the evidence, *Young*, 362 F.3d at 1001; *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000), the Court must "review the entire record," *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020), and remand "if the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Steele*, 290 F.3d at 940. The ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023).

## C.       The ALJ's Decision

On August 3, 2020, the ALJ issued a decision, following the standard five-step sequential process for determining disability. [R. 19-33.] At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of February 1, 2018. [R. 22.] At Step 2, the ALJ found that Plaintiff has severe impairments of: anxiety disorder, depressive disorder, headaches, irritable bowel syndrome, and diabetes mellitus with neuropathy

and non-severe impairment of degenerative disc disease. [R. 22-23.] The ALJ found that, although Plaintiff had claimed that lupus in part led to her inability to work, it was "a non-medically determinable impairment," because rheumatologists had determined that Plaintiff's laboratory results were negative for lupus. [R. 23.] At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 23-25.] But the ALJ did determine Plaintiff had mild mental limitations in the areas of understanding, remembering, or applying information; interacting with others; and adapting or managing herself; and a moderate limitation with regard to concentrating, persisting or maintaining pace. [R. 24-25.]

Before Step 4, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") "to perform sedentary work as defined in CFR 404.1567(a) except she requires a sit/stand option at will. She retains the capacity to understand, remember, concentrate, persist, and perform simple routine repetitive tasks in a low-stress environment, which is defined as having only simple work-related decisions and routine changes in the work setting." [R. 25.] The ALJ further specified that she could "attend to task for two hours at a time and then would need a 15 minute break, which can be accommodated by routine breaks and lunch." *Id*. At Step 4, the ALJ found Plaintiff was unable to perform her past relevant work as an accounting clerk, administrative clerk, or leasing agent. [R. 31-32.] However, at Step 5, the ALJ found that other jobs existed in significant numbers in the national economy that Plaintiff would be able to perform. [R. 32-33.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act at any time from her amended alleged onset date through the date of the ALJ's decision. [R. 33.]

## II. ANALYSIS

Plaintiff argues that: (1) the ALJ made "logical errors" in the RFC; (2) the ALJ erred "in evaluating [P]laintiff's symptoms"; and (3) that Social Security Administration was

unconstitutionally structured. (Pl.'s Br. In Supp. Reversing Decision Comm'r Soc. Sec. (Dkt. 14) at 5-15.))

The Court appreciates the general level of detail the ALJ provided to link her conclusions to the record; however, the Court agrees with Plaintiff that the ALJ did not build the required logical bridge between fatigue from Plaintiff's headaches and the resulting RFC. The Court accordingly does not reach Plaintiff's remaining arguments, including those regarding the ALJ's evaluation of Plaintiff's symptoms or the formulation of the RFC.[3]

The State Disability Determinations Services ("DDS") psychologists and physicians opined that Plaintiff "had no severe impairments," a conclusion the ALJ found to be unpersuasive. [R. 30.] The ALJ explained that, although Plaintiff's examinations had generally been normal, "the DDS physicians did not adequately consider [Plaintiff's] fatigue caused by her headaches" or Plaintiff's "decreased sensation in her lower extremities due to neuropathy[.]" *Id.*

In formulating Plaintiff's RFC, the ALJ expressly noted that Plaintiff's decreased sensation in her lower extremities stemming from diabetic neuropathy "supports a sit-stand option and restriction to sedentary work." *Id.* She also deliberately built into her RFC a limitation designed to accommodate Plaintiff's mental limitations.[4] [R. 25.] It is unclear, though, how the ALJ accommodated Plaintiff's headache-related fatigue (which she found significant enough to warrant greater consideration by the DDS physicians) in the RFC she formulated. It may not always be

---

[3]    Although the Court does not reach a conclusion on this issue in light of its conclusion on Plaintiff's first argument, the Court observes that numerous courts have rejected arguments like Plaintiff's separation-of-powers argument in light of developing case law. *See, e.g., Lissette B. v. Kijakazi*, No. 20 C 7685, 2023 WL 2472431, at *2 (N.D. Ill. Mar. 20, 2023) ("[I]n the wake of [*Collins v. Yellen*, 141 S. Ct. 1761, 1783 (2021)], 'numerous courts have ruled that a frustrated Social Security applicant…must show that the unconstitutional removal provision actually harmed her in some direct and identifiable way.'") (quoting *Cheryl T. v. Kijakazi*, No. 20 C 6960, 2022 WL 3716080 (N.D. Ill. Aug. 29, 2022) (collecting cases)); *see also Powell v. Kijakazi*, No. 21-CV-01160-JES-JEH, 2023 WL 2653358, at *10 (C.D. Ill. Mar. 27, 2023) ("The Court notes, however, that Social Security claimants' separation of powers arguments . . . have in the last several months repeatedly been rejected by federal courts throughout the country.") (collecting cases).

[4]    Again, given the resolution of this case on other grounds, the Court does not reach any conclusions as to the RFC's formulation as to such limitations.

necessary to explicitly link the RFC to a symptom, for example, where the plaintiff complains of fatigue symptoms obviously addressed through the chosen RFC. *See Matthews v. Saul*, 833 F. App'x. 432, 436-38 (7th Cir. 2020) (concluding that ALJ reasonably accommodated daytime fatigue with RFC limitations concerning workplace hazards and driving, rather than off-task time, where ALJ considered and rejected claimant's testimony regarding daytime sleep and that decision was supported by substantial evidence); *Smith v. Astrue*, No. 07-C-0955, 2008 WL 794518, at *2, 10 (E.D. Wis. Mar. 24, 2008) (finding, where plaintiff testified that normal daily activities included "watch[ing] TV, read[ing], and la[ying] down, that limiting plaintiff to sedentary work with a sit-stand option accounted for his particular complaints of fatigue, weakness, and dizziness). But here the ALJ neither pinpointed how the RFC would address Plaintiff's fatigue nor identified the particular symptoms of Plaintiff's fatigue that she was addressing.

On the one hand, the ALJ expressly accepted that Plaintiff experienced fatigue related to Plaintiff's headaches (and, in fact, faulted the DDS physicians' opinions for not accounting for it); on the other hand, she rejected Plaintiff's "extreme" hearing testimony as to the severity of the headaches[5] without identifying the headache-related fatigue symptoms that remained to be addressed through the RFC she drafted. This left the Court without a way to logically connect the ALJ's conclusions as to Plaintiff's RFC to the evidence, rendering the RFC unsupported by substantial evidence. *See Hildebrand v. Saul*, No. 2:17-CV-108-JPK, 2021 WL 1085605, at *6 (N.D. Ind. Mar. 22, 2021) (explaining that limiting plaintiff to sedentary work with other limitations as to hazards "might be adequate had the ALJ considered and rejected Plaintiff's testimony regarding the need to nap during the day, but the decision did not mention that claim, much less discredit it"); *Monika B. v. Saul*, No. 20 CV 638, 2020 WL 7626685, at *6 (N.D. Ill.

---

[5] The ALJ indicated that Plaintiff "complained of much less severe headaches to her providers" and relatively infrequently sought treatment for her headaches. [R. 26.] She did not, though, identify what fatigue symptoms she credited.

Dec. 22, 2020) (noting that, where the ALJ "discredited the plaintiff's claims about fatigue" but "made no specific determinations about [her] fatigue, like, for example, how frequently she napped," the court was "unable to trace how the plaintiff's symptoms of fatigue were accommodated by sedentary, postural, and environmental limitations"); *Kenneth P. v. Saul*, No. 18 C 3346, 2019 WL 4958245, at *7 (N.D. Ill. Oct. 8, 2019) ("The ALJ additionally failed to explain how sedentary limitations could accommodate Kenneth's issues with balance and fatigue[.]"); *Thompson v. Berryhill*, No. 2:18-CV-63-JEM, 2019 WL 632189, at *3 (N.D. Ind. Feb. 14, 2019) ("Because the ALJ offers no explanation of how the RFC accommodates Plaintiff's fatigue, the RFC is not supported by substantial evidence."); *Sipahimalani v. Colvin*, No. 1:12-cv-892-DKL-SEB, 2013 WL 5309898, at *10 (S.D. Ind. Sept. 23, 2013) ("It is not self-evident that an individual would not suffer the effects of fatigue or sleep apnea in sedentary jobs or than an individual could sustain such full-time jobs while experiencing those symptoms.").

A further related concern is that, without understanding the fatigue symptoms or how the RFC might have been tailored to cater to those symptoms, it is unclear whether the vocational expert's testimony (that off-task time above 15% could render Plaintiff unable to retain full-time work) might be implicated here. [R. 77]; *see Hildebrand*, 2021 WL 1085605, at *6 (noting that, where plaintiff testified without dispute that she needed to sleep during the day and vocational expert testified that off-task time could preclude full-time work, the ALJ needed to address those issues on remand). The Court accordingly is unable to determine that the logical gaps in the ALJ's opinion were necessarily harmless.

The ALJ must minimally explain which aspects of Plaintiff's testimony she credits or disregards and why, with reference to the record so that the Court can connect the dots between her conclusions and the evidence. The Court stresses that the foregoing should not be construed as an indication that the Court believes that Plaintiff is disabled or that she should be awarded

benefits. The Court leaves those issues to be determined by the Commissioner after further proceedings. Given the Court's remand on the above grounds, the Court does not reach the remaining case-specific issues Plaintiff raises in this appeal. On remand, the ALJ is encouraged to consider those issues.

## III. CONCLUSION

For the reasons detailed above, Plaintiff's motion for summary judgment [Dkt. 14] is granted, and the Commissioner's motion [Dkt. 21] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED: December 22, 2023

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge